UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADRIAN ROWE, *individually and on behalf of all others similarly situated*, *et al.*,

                              Plaintiffs,

        v.

OLD DOMINION FREIGHT LINES, INC.,

                         Defendant.

No. 21-CV-4021 (KMK)

---

SAMUEL BOWENS*, individually and on behalf of all others similarly situated*,

                              Plaintiff,

    v.

OLD DOMINION FREIGHT LINES, INC.,

                         Defendant.

No. 21-CV-8040 (KMK)

OPINION & ORDER

---

Appearances:

Shelly Leonard, Esq.
Steven B. Blau, Esq.
Blau Leonard Law Group
Huntington, NY
*Counsel for Plaintiffs*

Brett C. Bartlett, Esq.
Lennon Haas, Esq.
Seyfarth Shaw, LLP
Atlanta, GA
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Adrian Rowe ("Rowe"), Samuel Bowens ("Bowens"), Jeffrey Orellana ("Orellana"); Ramon Lopez ("Lopez"), Samuel Milan ("Milan"), Kenny Roe ("Roe"), Frederick LaFlair ("LaFlair"), and Francisco Soler ("Soler"; collectively, "Plaintiffs"), bring this putative class action pursuant to various sections of New York's Labor Law ("NYLL") against Old Dominion Freight Line, Inc. ("ODFL" or "Defendant"), alleging that ODFL "engaged in a systematic scheme" of wage and employment misconduct in violation of NYLL. (*See generally* Am. Compl.) (Dkt. No. 22).)[1]  Before the Court is Defendant's Motion To Dismiss (the "Motion"). (Not. of Mot. (Dkt. No. 32).)  For the following reasons, Defendants' Motion is granted.

<u>I.  Background</u>

A.  <u>Factual Background</u>

Unless otherwise stated, the following facts are drawn from Plaintiffs' Amended Complaint ("AC") and are assumed true for the purpose of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

ODFL is a business corporation that, while created in Virginia and based in North Carolina, "is authorized and regularly transacts business in New York, maintaining offices and facilities" throughout the Empire State.  (AC ¶¶ 12–13.)  Moreover, "ODFL is one of the largest North American less-than-truckload (['']LTL['']) motor carriers, providing regional, inter-regional[,] and national LTL services through an expansive network of service centers located

---

[1] The two Actions were consolidated on October 15, 2021.  (*See* Stipulation and Order, *Rowe et al. v. Old Dominion Freight Lines, Inc.*, No. 21-CV-4021 (S.D.N.Y. Oct. 15, 2021), Dkt. No. 20; Stipulation and Order, *Bowens v. Old Dominion Freight Lines, Inc.*, No. 21-CV-8040 (S.D.N.Y. Oct. 15, 2021), Dkt. No. 11.)  For clarity and consistency, unless otherwise stated, all of the Court's citations to the record pertain to the *Rowe* Action.

throughout the continental United States . . . responsible for the pickup and delivery of freight within [the centers'] local service area."  (*Id.* ¶¶ 33–34.)

Plaintiffs are "former and current truck drivers employed by ODFL who primarily worked throughout and within the State of New York."  (*Id.* ¶ 1.)  Plaintiffs allege that from 2015 to 2020, ODFL "failed to pay Plaintiffs overtime compensation at 1.5 times the prevailing New York minimum wage for all workweeks in excess of 40 hours," instead "only pa[ying] Plaintiffs straight time compensation for all workweeks in excess of 40 hours."  (*Id.* ¶¶ 38–39.)[2] Additionally, Plaintiffs allege that "ODFL failed to provide meal periods" under to NYLL § 162, which entitles employees "to at least a 30-minute lunch break without exception," as a result of ODFL's "policies and procedures."  (*Id.* ¶¶ 43–45.)  Finally, Plaintiffs allege that "ODFL failed to pay Plaintiff and Putative Class members all wages due and owing at the time of termination of their employment as required by NYLL § 191" insofar as Defendant failed to pay the above wages owed to Plaintiffs.  (*Id.* ¶ 50.)

Plaintiffs also allege certain facts pertaining to the proposed class, including that "there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable."  (*Id.* ¶ 62.1.)[3]  Plaintiffs further allege that the proposed class is "so numerous that joinder of all members is impractical," that "questions of law and fact [are] common to the

---

[2] Plaintiffs allege in the AC that they were employed by ODFL "[a]t all relevant times." (AC ¶ 32; *see also id.* ¶¶ 35, 36 (denoting "[a]t all times relevant to this Complaint")).)  However, Plaintiffs detail the different tenures each putative plaintiff enjoyed at ODFL, ranging from 19 years to just over one year, (*see id.* ¶¶ 18, 20, 22, 24, 26, 28, 30), which renders the 2015–2020 window impossible.  Ultimately, this inconsistency does not bear on the Court's conclusion.

[3] Plaintiffs seemingly inadvertently numbered two paragraphs "62" on page 9 of the AC. The Court references these two paragraphs individually using ¶ 62.1 and ¶ 62.2, respectively.

[c]lass," that the named Plaintiffs are adequate representatives who will protect the class's interests, and that common questions predominate the Action.  (*Id.* ¶¶ 62.2–66.)

Plaintiffs seek relief in the form of class certification as well as judgment "for all unpaid wages for work performed," "all unpaid overtime compensation," "all unpaid wages due and owing at the time of termination," and liquidated damages.  (*Id.* § Prayer for Relief.)  Plaintiffs also request reasonable attorney's fees.  (*Id.*)

B.  Procedural History

Rowe filed the putative class action on May 5, 2021.  (Dkt. No. 1.)  ODFL filed an Answer on July 20, 2021.  (Dkt. No. 14.)

Bowens, by contrast, had originally filed his complaint in New York State Court, but ODFL removed the Action on September 28, 2021.  (*See generally Bowens* Dkt. No. 1 (Notice of Removal).)

On October 15, 2021, the Parties stipulated and agreed to consolidating the *Rowe* and *Bowens* Actions.  (Dkt. No. 20; *see also Bowens* Dkt. No. 11.)  Three days later, Plaintiffs filed an Amended Complaint, dropping two causes of action as well as adding six additional party plaintiffs beyond Rowe and Bowens, namely Orellana, Lopez, Milan, Roe, LaFlair, and Soler. (*See* Dkt. No. 22.)

On January 24, 2022, Defendant filed the instant Motion.  (Not. of Mot.; Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 33).)[4]  On February 10, 2022, Plaintiffs filed their Opposition.  (*See* Pls.' Mem. of Law in Opp'n of Mot. To Dismiss ("Pls.'

---

[4] Defendant's Motion was due January 10, 2022.  Defendant attempted to file it on that day, but Defendant seemingly inadvertently erred in the filing itself.  (*See* Dkt. No. 28.) Accordingly, the Court will not penalize Defendant for its accidental tardiness.

Mem.") (Dkt. No. 34).)  On February 24, 2022, Defendant filed its Reply.  (*See* Def.'s Reply in Supp. of Mot. To Dismiss ("Def.'s Reply Mem.") (Dkt. No. 35).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second

alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

Defendant argues that Plaintiffs fail to adequately allege any of the three claims Plaintiffs purportedly alleged: wage claims, meal break claims, and timely termination pay claims. (*See* Def.'s Mem. 4–8; Def.'s Reply Mem. 1–3.)[5] Plaintiffs dispute this, arguing that they have met their burden. (*See generally* Pl.'s Mem. 8–15.) Defendant also argues that Plaintiffs have

---

[5] As Defendant notes, (*see* Def.'s Mem. 1 n.1), Plaintiffs' claims sound in three distinct categories, notwithstanding the headings and nomenclature deployed in the Amended Complaint, (*see* AC ¶¶ 68–82). The Court adopts Defendant's sound framework. Notably, Plaintiffs' Amended Complaint also uses consecutively numbered paragraphs, but inexplicably reverts from paragraph 80 to paragraph 61. The Court assumes this was an inadvertent error, meaning that Plaintiff meant to number the second iteration of paragraphs 61 and 62 as 81 and 82, respectively, and thus cites those paragraphs accordingly.

abandoned their meal break and timely termination claims by failing to discuss them in their Reply.  (*See* Def.'s Reply Mem. 2–3.)

Separately, Defendant argues that Plaintiffs' claims are inappropriately considered together as a class.  (*See* Def.'s Mem. 8–9; Def.'s Reply Mem. 3–5.)  Plaintiffs rebut that the claims alleged are appropriate for class treatment because the "members are aggrieved by a single overtime policy of ODFL and rely on this legal theory common to all victims of that policy," (Pl.'s Mem. 4), notwithstanding minor, navigable differences in each plaintiff's unique factual circumstances, (*see sid.* at 4–8).

The Court evaluates these arguments in turn to the extent necessary.

### 1.  Wage Claims

"In interpreting an administrative regulation, as in interpreting a statute, [the Court] must begin by examining the language of the provision at issue." *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002).  "[T]he plain meaning of language in a regulation governs unless that meaning would lead to absurd results." *Forest Watch v. U.S. Forest Serv.*, 410 F.3d 115, 117 (2d Cir. 2005) (alteration in original) (citation omitted).

Section 142-2.2 of the New York Codes, Rules, and Regulations (the "Rule"), promulgated by the New York Department of Labor ("NYDOL"), governs the payment of overtime wages to employees:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 et seq., the Fair Labor Standards Act ["FLSA"] of 1938, as amended, provided, however, that the exemptions set forth in section 13(a)(2) and (4) shall not apply.  In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to section 13(a)(2) and (4) of such act, overtime at a wage rate of one and one-half times the basic minimum hourly rate.

12 N.Y. C.R.R. § 142-2.2.  In plain terms, the Rule states that employees not subject to FLSA exemptions must be paid, at a minimum, "one and one-half times *the employee's regular rate*" for all overtime hours worked.  *Id.* (emphasis added).  Employees subject to such exemptions, by contrast, must be paid for comparable hours, at a minimum, "one and one-half times the basic minimum hourly rate."  *Id.*  No Party disputes that Plaintiffs are "exempt from the FLSA," (Pls.' Mem. 1; *see also* Def.'s Mem. 2), meaning the allegations at issue turn on the interpretation of the Rule's final sentence.

Curiously, Plaintiffs interpret this operative sentence to mean that they should receive pay for all overtime hours, i.e. hours beyond forty per week, "equal to [their] regular pay rate ***plus one half times New York State's minimum wage***."  (Pls.' Mem. 10 (emphasis in original).)  Defendant, on the other hand, interprets the same sentence to mean that for all overtime hours, an employee's wage must simply be equal to or more than one and one-half times the minimum wage.  (*See* Def.'s Mem. 4.)  "It is clear from the rather straightforward language of the regulation," *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1087 (2d Cir. 1997), that Defendant reads the Rule correctly.  "This Court must afford clear and unambiguous language its plain and ordinary meaning," *Kurtin v. Nat'l R.R. Passenger Corp. (Amtrak)*, 887 F. Supp. 676, 680 (S.D.N.Y. 1995), and the regulation is in no way ambiguous: "A plain reading of [the Rule] demonstrates that employees subject to FLSA exemptions . . . are . . . entitled to overtime compensation at a rate of one and one-half times the minimum wage."  *Hayward v. IBI Armored Servs. Inc*, 954 F.3d 573, 575–76 (2d Cir. 2020) (per curiam).

The misguided nature of Plaintiffs' interpretation is even clearer when considering the express bifurcation made by the NYDOL: the Rule expressly creates an overtime minimum wage for non-FLSA-exempt employees based on their regular wage, whereas it ties FLSA-exempt

employees' minimum overtime wages to the state's basic minimum wage. Plaintiff inexplicably

asks the Court to blend these distinct reference points such that FLSA-exempt employees'

minimum overtime wage would be a combination of the two points of reference, namely "[their]

regular pay rate **plus one half times New York State's minimum wage**." (Pls.' Mem. 10 (first

emphasis added, second emphasis in original).) There is simply no textual support for such a

fusion, and "[t]he Court is not at liberty to override the language of this regulation, because it is

plain and unambiguous." *Danecker v. Bd. of Trustees of Serv. Emps. 32BJ N. Pension Fund*, 882

F. Supp. 2d 606, 611 (S.D.N.Y. 2012). Therefore, Plaintiffs do not allege a violation of the Rule

when they assert only that they were paid a wage *above* one and one-half times the basic

minimum wage for all overtime hours worked.[6] "[T]he plain meaning of the regulation compels

the above-stated conclusion." *Zani v. Rite Aid Headquarters Corp.*, 246 F. Supp. 3d 835, 856

(S.D.N.Y. 2017), *aff'd* 725 F. App'x 41 (2d Cir. 2018).

   The Court's interpretation of the Rule as well as the outcome it demands is bolstered by

several things. First, the Second Circuit's lone applicable—if slightly adjacent—precedent

supports the Court's reasoning. In *Hayward*, the plaintiff was paid more than the state's

prevailing minimum wage, but less than one-and-one-half of that amount for all overtime hours.

*See* 954 F.3d at 576. For this reason, the Second Circuit held that the plaintiff had viable claims

under the Rule because, as an FLSA-exempted employee, his "employer[] must provide overtime

compensation at a rate of one and one-half times *the minimum wage*." *Id.* (emphasis added). In

other words, the Second Circuit specifically *did not* hold that the plaintiff's employer had to

---

   [6] The necessary caveat, of course, is for any situation in which an employee's wages are
*reduced* for overtime wages, even if they nonetheless surpass this regulatory floor, as lowering
overtime wages could run afoul of other statutes not at issue here, *see* N.Y. Lab. Law § 193
(describing the limited circumstances in which employers may deduct wages). However,
because that is not alleged in the AC, the Court need not concern itself with such a hypothetical.

increase the plaintiff's overtime wage to be equivalent to his normal wage *plus* one-half of the minimum wage—the interpretation Plaintiffs in this Action would have the Court adopt. Therefore, though *Hayward* is slightly factually distinct, it is nonetheless highly instructive: because Plaintiffs in this Action were already paid more than one-and-one-half times the minimum wage per hour for all overtime hours, Defendant was already in compliance with the Rule throughout Plaintiffs' employment—unlike the defendant employer in *Hayward*—and thus need not augment Plaintiffs' overtime wages any further—again unlike the *Hayward* employer defendant.

Second, the Court's interpretation is in harmony with the New York State Supreme Court's interpretation of the Rule, the court "in the best position to interpret New York law." *Corcoran v. Ardra Ins. Co.*, 657 F. Supp. 1223, 1235 (S.D.N.Y. 1987); *accord In re Am. Made Tires Inc.*, No. 11-50397, 2016 WL 3448395, at *12 (Bankr. E.D.N.Y. June 14, 2016) ("The principle of comity invites federal courts to defer to state courts in the interpretation of state law, and New York Supreme Court is in the best position to interpret novel state law claims."). In *Edwards v. Jet Blue Airways Corp.*, 873 N.Y.S.2d 233 (Table), 2008 WL 4482409 (N.Y. Sup. Ct. 2008) (unpublished), the Supreme Court, Kings County, upon reconsideration, relied on the NYCOL's interpretation of the Rule to hold that "payment of the employee's regular hourly pay rate for overtime is sufficient where the employee's regular hourly pay rate is greater than one and one-half times the minimum wage." *Id.* at *4.

Plaintiffs try to sidestep *Edwards* by arguing that the decision "was clear error of law and would not be followed by the higher New York appellate courts," (Pls.' Mem. 12), in part because the NYDOL's interpretation purportedly conflicts with the Rule's plain meaning, (*see*

*id.* at 12–15).  The Court disagrees.  The Court's independent interpretation of the Rule disproves

Plaintiffs' theory that NYDOL's interpretation conflicts with the Rule.  Moreover,

> [t]he Court of Appeals has . . . spoken decisively on the subject of deference to agency interpretations of the statutes they enforce.  That court has said: "[T]he construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld" such that the court "treads gently in second-guessing the experience and expertise of state agencies charged with administering statutes and regulations."  *Entergy Nuclear Operations, Inc. v. N.Y. State Dep't of State*, 66 N.E.3d 1062, 1067 (N.Y. 2016) (alteration in original) (internal quotation marks omitted); *see also Matter of Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Envtl. Conservation*, 34 N.E.3d 782, 796 (N.Y. 2015); *Matter of Howard v. Wyman*, 271 N.E.2d 528, 529–30 (N.Y. 1971).

*Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 416 (S.D.N.Y. 2018).  Thus, even

setting aside its own interpretation, the Court would be reluctant to upend the NYDOL's

unequivocal interpretation of the Rule.

Moreover, that *Edwards* remains accepted precedent—a fact Plaintiffs impliedly

acknowledge, (*see* Pls.' Mem. 11–12)—some fourteen years later further suggests that it was

rightly decided.  Indeed, a federal court in New York and a New York state court alike have cited

*Edwards*, the former of which relied specifically on the holding at issue.  *See Mancero v. 242 E.

38th St. Tenants Corp.*, No. 100721/11, 975 N.Y.S.2d 710 (unreported opinion), 2013 WL

3723206, at *1 (N.Y. Sup. Ct. 2013) (citing *Edwards* as "inapposite" to the plaintiffs' argument

that they, as janitors, are entitled to additional overtime pay), *adhered to on reargument*, 2014

WL 317835 (N.Y. Sup. Ct. 2014); *Scholtisek v. Eldre Corp.*, 697 F. Supp. 2d 445, 465

(W.D.N.Y. 2010) (cited in discussions of rate of pay for employees entitled to overtime pay).  As

the United States Supreme Court has previously observed, "[legislative] silence after years of

judicial interpretation supports adherence to the traditional view."  *Gen. Dynamics Land Sys.,

Inc. v. Cline*, 540 U.S. 581, 594 (2004); *see also Apex Hosiery Co. v. Leader*, 310 U.S. 469, 488

(1940) ("The long time failure of [the legislature] to alter [a law] after it had been judicially construed . . . is persuasive of legislative recognition that the judicial construction is the correct one.").  New York courts have echoed this thinking.  *See, e.g.*, *Desrosiers v. Perry Ellis Menswear, LLC*, 90 N.E.3d 1262, 1268 (N.Y. 2017) ("[I]t is a recognized principle that where a statute has been interpreted by the courts, the continued use of the same language by the Legislature subsequent to the judicial interpretation is indicative that the legislative intent has been correctly ascertained" (quoting *Matter of Knight–Ridder Broad. v. Greenberg*, 511 N.E.2d 1116, 1119 (N.Y. 1987))); *Normile v. Allstate Ins. Co.*, 448 N.Y.S.2d 907, 908–09 (App. Div. 1982) (observing that "[t]he Legislature did not attempt to clarify [a] provision" following judicial interpretation and stating that courts "must assume that [legislatures] were aware of such practice and regulations"), *aff'd*, 459 N.E.2d 843 (N.Y. 1983).  Accordingly, the legislature's and the NYDOL's "failure to amend" the Rule following the *Edwards* decision as well as decisions citing thereto "provides some indication" that the precedent need not—and in fact should not—be upended.  *United States v. Cook*, 76 F.3d 596, 601 (4th Cir. 1996).

Finally, that the Rule specifically ties overtime minimum wages for non-FLSA-exempted workers to their regular wages demonstrates NYDOL's understanding of how to link an overtime minimum wage to an individual's regular wage; choosing to do so for non-FLSA-exempt employees while choosing not to do so for FLSA-exempted employees evinces a deliberate choice to effectuate this framework.  *Cf. Colgrove v. Battin*, 413 U.S. 149, 163 (1973) ("If Congress had meant to . . . [effectuate the desired interpretation] . . . 'it knew how to use express language to that effect.'" (quoting *Williams v. Florida*, 399 U.S. 78, 97 (1970))); *NLRB v. Canning*, 573 U.S. 513, 600 (2014) (Scalia, J., concurring) ("If the [legislature] had thought [to enact a given scheme], they would have known how to do so.").

12

In sum, to read the rule in the way Plaintiffs suggest would require the Court to exceed its authority in support of Plaintiffs' animating policy preference, namely raising the wages of certainly employees.  "The Court declines this invitation to so legislate from the bench.  Should [Plaintiffs] wish to revise the NYLL to provide the [wage calculations] they seek, their proper audience is the New York State Legislature."  *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 456 (S.D.N.Y. 2014).  Because, as stated above, Plaintiffs have not alleged an actual violation of the Rule, the Court grants Defendant's Motion with respect to Plaintiffs' claims thereunder.  *See Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14-CV-2065, 2015 WL 13654007, at *18 (S.D.N.Y. Mar. 26, 2015) ("[The] [p]laintiff cannot state a claim under [a provision of the New York Labor Law] because she fails to allege an actual violation of a law, rule, or regulation.").[7]

### 2.  Meal Breaks and Timely Termination

"It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims."  *Ross v. Port Chester Hous. Auth.*, No. 17-CV-4770, 2019 WL 4738941, at *7 (S.D.N.Y. Sept. 27, 2019) (collecting cases); *see also Postell v. Fallsburg Libr.*, No. 20-CV-3991, 2022 WL 1092857, at *7 (S.D.N.Y. Apr. 8, 2022) (same).  Defendant argues that Plaintiffs have done just that: abandoned their

---

[7] Plaintiffs attempt to frame the Court's interpretation as groundless, quoting the initial *Edwards* opinion by saying that "[l]ogic dictates that the Department of Labor would not penalize someone for earning above the minimum wage."  (Pls.' Mem. 10 (quotation marks and citation omitted).)  A convenient rhetorical device, this is, at bottom, a policy argument best made to those who make policy.  Indeed, no outcome would penalize any Party; Plaintiffs are not being "penalize[d]" for earning above minimum wage, (*id.*), in the same way that, were the Court to rule otherwise, Defendant—or other businesses—would not be "penalize[d]" for paying an employee more than one and one-half times the minimum wage only to then have to pay even more in overtime wages.  The Court is merely enforcing laws as written by the legislature and its implementing regulations as promulgated by authorized agencies.

claims regarding meal periods and termination pay, having failed to oppose Defendant's arguments in their briefing papers.  (*See* Def.'s Reply Mem. 2–3.)  The Court agrees.

Plaintiffs' Amended Complaint alleges that Defendant "failed to provide meal periods, compliant under NYLL [§] 162, to Plaintiffs and putative Class Members."  (AC ¶ 43.)  In support of its Motion, Defendant argues that "NYLL § 162 lacks a private right of action." (Def.'s Mem. 2; *see also id.* at 6–7.)  In reply, Plaintiffs make no mention of this claim; indeed, Plaintiffs' memorandum does not include the word "meal" nor a reference to § 162.  (*See generally* Pls.' Mem.)

Additionally, the Amended Complaint alleges that Defendant failed to abide by Labor Law § 191, which required Defendant "to pay Plaintiff and Putative Class members all earned wages on the next scheduled payday after quitting or being fired."  (AC ¶ 51; *see also id.* ¶¶ 50– 52.)  In support of its Motion, Defendant argues that because Plaintiffs could not plausibly allege claims for wage violations, those violations "cannot therefore serve as the factual predicate for a claim to wages due at termination."  (Def.'s Mem. 7; *see also id.* at 7–8.)  In reply, Plaintiffs again make no mention of these claims, failing to even use the words "quit," "fire," or "terminate."  (*See generally* Pls.' Mem.)

Plaintiffs' failure to discuss, let alone rebut, Defendant's argument can be considered nothing other than abandonment.  *See, e.g.*, *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim.").  That Plaintiffs choose to dispute some, but not all, of Defendant's arguments only underpins this conclusion.  *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others. . . .

Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended.").  Accordingly, Plaintiffs' claims regarding meal pay and termination pay are considered abandoned and Defendant's Motion on these claims is granted. *See P.C.R. v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778, 2022 WL 337072, at *22 (S.D.N.Y. Feb. 4, 2022) ("Courts routinely hold that where a plaintiff 'fails to address [the] defendants' arguments against or even mention several of [his or her] claims,' those claims are deemed 'abandoned.'" (alterations in original) (quoting *Robinson v. Am. Int'l Grp., Inc.*, No. 08-CV-1724, 2009 WL 3154312, at *4 & n.65 (S.D.N.Y. Sept. 30, 2009)); *cf. Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 46 n.1 (2d Cir. 2018) (summary order) (affirming "the [d]istrict [c]ourt's dismissal of those claims on the ground that they were 'abandoned' by [the plaintiff] when she failed to oppose them in her opposition to [the defendant's] motion to dismiss.").[8]

### III.  Conclusion

For the foregoing reasons, the Court grants Defendant's Motion.  The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *cf.* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Should Plaintiffs choose to file an amended complaint, they must do so within 30 days of this Opinion & Order, addressing the deficiencies identified herein.  The amended complaint will replace, not

---

[8] "To the extent that Plaintiffs seek[] to represent a proposed class, those allegations cannot survive where Plaintiffs' individual claims have failed to state a claim, as they have failed to do so here." *Amable v. New Sch.*, No. 20-CV-3811, 2022 WL 1443352, at *11 n.9 (S.D.N.Y. May 6, 2022) (alterations and quotation marks omitted); *see also Poughkeepsie Waterfront Dev. LLC v. Travelers Indem. Co. of Am., et al.*, No. 20-CV-4890, 2021 WL 4392304, at *3 n.4 (S.D.N.Y. Sept. 24, 2021) (same).  Thus, the Court will not consider allegations related to the proposed class.

supplement, the complaint currently before the Court.  It therefore must contain all of the claims

and factual allegations Plaintiff wishes the Court to consider.  If Plaintiffs fail to abide by the 30-

day deadline, this Action could be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (*Rowe* Dkt.

No. 32; *Bowens* Dkt. No. 20).

SO ORDERED.

DATED:      June 16, 2022
            White Plains, New York

_____
            KENNETH M. KARAS
            United States District Judge